Good morning, Your Honors. My name is Emekan Okoro, and I am the attorney for the appellant, Mr. Nunez. This appeal is somewhat complex because we appealed on so many issues. The central claim why this case should be reversed is based on the lack of probable cause for the arrest of Mr. Nunez. If the court were to find in favor of the city on this issue, then this appeal would be a nonstarter. But if the court were to find in favor of the appellant, then most of the decisions that the court made at various times during the course of this proceeding should be reversed. This case arose from a shooting in the Bronx. There were two perpetrators who shot into a crowd of people, injuring among other persons, a five-year-old girl. Can I ask a question? Yes, Your Honor. Has your client received any kind of remuneration from anyone for the years he spent on Rikers Island? No. Now, I think we do know the background to the case, and as you said, the focus is probable cause. The Respondents or the Defendants addressed this by pointing to the fact that there were — there was an eyewitness identification. So why don't you — and usually that's enough to establish probable cause. So why don't we hear your argument as to why that shouldn't be the conclusion in this case? Thank you, Your Honor. The eyewitness you referred to is Brian Perez. He was one of the victims of the shooting, but he wasn't shot himself. Now, immediately after the shoot — after the shooting, he called 911 and he described the perpetrators. That description did not fit the plaintiff in this case. After that, he was interrogated by the police for, like, one week, and he stuck to his story. Two weeks later, after two significant things had happened, he changed his story from the long-haired, pony-tailed people who shot at him to Mr. Nunes. But he also told the police that he didn't get that information from seeing Mr. Nunes shooting at him. He got that information from an unidentified source who was a friend of his known as Gringo. This is the key. He wasn't identifying Mr. Nunes as an eyewitness. He wasn't an eyewitness to the shooting. He was telling the police that this is what somebody told him. A reasonable person in the — in the position of either Detective Nunes or Detective Acosta should have known that Brian Perez saying, somebody told me that this were the people who did the shooting, and Brian Perez saying, I saw this guy, he did the shooting. Those are two different things. But they switched those two identifications. And this is why they are not entitled to qualified immunity. They — they actually, nine days before Mr. Perez told the police that he was an eyewitness, supposed identification of Mr. Nunes, the two detectives interviewed a confidential informant who did exactly the same thing as Gringo did. He said, I know who shot these people. I saw them on Facebook. It's these two guys describing people that would look like my client and someone else. Now, the trouble the district court had with this was that, to the extent Officer Dietrich is the person being charged with the arrest, there was no evidence that he knew some of the facts you're pointing to. So why do you think the district court was wrong in reaching that conclusion? Yes, Your Honor. Judge Sullivan did concede that there was no probable cause on the summary judgment ruling, but he said that he wasn't — he wasn't sure that Dietrich was aware of this. What I'm looking at is the district court's conclusion that there was no evidence that Dietrich learned of the police reports that had some of the inconsistencies or problems you've just identified. And — and so it didn't think you could maintain the action against Officer Dietrich. But here's the problem with that, Your Honor. Officer Dietrich was the investigating officer, the prime investigating officer for this investigation. It was Dietrich and Acosta. They were partners at some point. And he was the person assigned to this investigation. Right. But at this point, you've had — you've had discovery. And I — you deposed Officer Dietrich? Yes. And did you ask him whether he had seen these reports? Actually, I — I just misinformed the court, Your Honor. Officer Dietrich was not deposed. Yeah, but this is the problem. The district court is saying that you had to come forward with evidence that he knew these problems when he went and arrested your client. And the district court said there's no evidence of this. But there was already evidence on the record that looked at in — in the light most favorable to the — to the plaintiff, which — which is the standard, that the court had to conclude that Detective Dietrich knew about these facts. Based on what? Based on the fact that he — he conducted the photo — photo array identification of Nunes by Perez. He did the lineup identification of Nunes by Perez. And there's no way that he can do this — these two things and be the investigating officer and not know the sum of the evidence that the police had gathered up till that time. It's — it's almost — if you look at it in the light of the — of the — the — the standard that Judge Sullivan had to review this case under is that he had to take the allegations of the plaintiff as true. And under that standard, whether you're talking about the motion to dismiss or the motion for summary judgment, if he reviewed it under that standard, he had to conclude that Dietrich knew the — the sum of the evidence that the police had gathered up till that point. And this was a really important investigation. A 5-year-old girl was shot. The police went all out to — to find the perpetrators. There — there's no way that he could be the investigating police officer and not know these facts. That would be criminal negligence on his part. Why wasn't his deposition taken, Detective Dietrich? Why wasn't his deposition taken? Your Honor, I hate to pass the buck, but my firm took over this case at the state level stage after most of the significant litigation had been done. I — I never had an opportunity to — to take Detective Dietrich's deposition. Prior counsel didn't take Detective Dietrich's deposition because the — Judge Sullivan had dismissed all claims that counsel felt were significant. And the — the only claim that was left, which was the excessive force claim, was not really viable from counsel's point of view. So he didn't want to — it would have been many less litigation — litigation cost by counsel's — in his opinion. That — that claim did go to trial, so. The excessive force claim did go to trial, and the jury returned a verdict for the — for the defendant. All right. I know you want to reserve some time. Let's hear from the other side, and then we'll hear from you again. Thank you, Your Honor. Good morning, Your Honors. Eric Lee for the appellees. This Court should affirm the grants of defendant's motion to dismiss and the motion for summary judgment. I want to focus on what Appellant focused on, which is what he called the central theme, the probable cause issue, which he concedes that if it cannot be established, this Court should affirm. As Appellant mentioned, Mr. Perez was an eyewitness to the crime, and as he also mentioned, he was a victim to the crime. And as Your Honor mentioned, that generally is enough for probable cause to exist. The case law in this Court is very clear on that. And at this presentation, Appellant still has not addressed the fatal flaws that we pointed out in the brief. He still has not shown why there was material reason to doubt Mr. Nunez as one of the perpetrators. Again, the appellant has mentioned the 911 call, but as the district court correctly pointed out, there is nothing in the record to suggest that the person who made that call was Mr. Perez, absolutely nothing. So this is simply speculative. He also raised the issue about the fact that Mr. Perez had learned, had received photos from a friend of his named Gringo. But again, if anything, it actually confirms what the police were independently learning through their investigative efforts. As he pointed out, a confidential source said the same thing, that someone named Pretty Boy Ferreira, who was also arrested and indicted by the grand jury, and someone named Cuero was involved in this incident. Similarly, the appellant has not addressed another fatal flaw, which is how Diedrich was at all aware of any of the allegedly exculpatory information that would have cast doubt on probable cause. He's urging us to conclude that such an inference could be drawn from his role in the investigation. What's your response to that? Two points, Your Honor. First, I think the case law in this Court is clear that because a fundamental principle of 1983 liability is personal direct involvement, this Court has said you can't impute knowledge of exculpatory evidence to officers. That's not the way that you can use the collective knowledge doctrine. The second point is, it's actually many officers were involved in this investigation. So I'm not quite sure where appellant is getting the suggestion that Diedrich should have known everything because he was one of the principal players. As Your Honor pointed out, the initial police papers showed all sorts of different police officers who interviewed the witnesses and other as they pursued this investigation. Diedrich became involved when he arrested the plaintiff and then subsequently conducted, I believe, a lineup and then an interview. And those incidents, obviously, were addressed ultimately in a trial about excessive force, which, as appellant also mentioned, was a verdict for the defense. Was there ever a trial with respect to the allegations against his client, the original criminal charges against him? No. Those were dismissed. How long between the time that he was arrested and the time of dismissal? How long did that take? It was approximately three years. Not a long time. Is there a reason for that? Excuse me? Is there a reason for that? That strikes me as a long time to figure out a guy didn't do it. Well, what we know from the record is that the prosecutor, Ms. Takanas, said that ultimately they had to dismiss the charges because Mr. Perez, they lost contact with him. They lost the witness. Correct. They lost the witness. They issued a material witness warrant. They couldn't find him, and he was subsequently indicted on an unrelated charge. So they decided to drop it. And on that just last point, Your Honors, on the discovery point, again, as Your Honor mentioned, Officer Diedrich was taken to trial on excessive force claim. The only they could have taken a deposition of him and Officer Acosta and all the other officers involved. They did not. Unfortunately, that's what the record is, and this Court should affirm. Thank you. Thank you. Mr. McCarroll. Your Honor, I just want to touch on a couple of things. They didn't lose the witness. Mr. Perez called Mr. Nunez's criminal defense counsel and told him essentially all these facts that both Eddie A. Takanas and the police had withheld from both the grand jury and Mr. Nunez's criminal defense regarding all the reasons why they shouldn't have arrested Nunez in the first place. That was after the fact, right? Including after Mr. Perez testified under oath in the grand jury to the identification of your client, right? Correct. So to the extent you're faulting the arresting officers, all of that conduct comes after the arrest, all that knowledge of perhaps what we'll call a recantation by Mr. Perez. That comes all after the fact. That is correct, Your Honor. I only mentioned that. So how does that help you? Well, I only mentioned that with respect to counsel's answer to His Honor that it was due to a lost witness. Well, but it's complicated because the conversation with your client's attorney happened first, and then Mr. Perez did go missing for a period of time where no one knew where he was, right? No. At that point, he ---- I think that's what the record seemed to show. No. He was arrested, and he was ---- Yes. That's how he surfaced again was that he was arrested. He was arrested, and they knew exactly where he was. They could have produced him at any point. Why don't you deal with your why you think you should get vacater or reversal here? With respect to the probable cause issue? Or whatever you want to argue. Where counsel said that there is nothing on the record to show that there was nothing on the record to show that there was probable cause, in my brief, I cited eight different items of evidence, excorporeal evidence, that even consideration of like four of them alone would lead any reasonable person. The test is always one of reason. It will lead any reasonable person in the position of Detectives Dedrick or Acosta to conclude indisputably that there was no probable cause. There's eight of them. You have even more difficulty, don't you, linking any of the knowledge of some of this stuff to Detective Acosta or Officer Acosta? No. Officer ---- Officer Acosta was aware of these evidentiary problems. Well, just like Dedrick, he was involved in the investigation in the sense that he ---- Counsel just cited a case that you can't use the collective knowledge doctrine to impute awareness of exculpatory material. What's your response to that? I'm not doing that. With respect to Acosta, Plintiff sufficiently pled his involvement because on June 2nd, he prepared and conducted a photo array. Right. Which you don't argue is suggestive, right? You don't challenge the photo array. No. I challenge the photo array. It was based on Brian Perez's on Nunez being told by a non-witness. The photo array itself, though, was not suggestive. It didn't make a viewer pick out one person over another. No. I don't allege that. Okay. No. He prepared the photo array identification for Perez, and he issued an ICAD authorizing the arrest of Ferreira, who was the co-defendant in the criminal proceeding. And he helped arrange a lineup identification procedure for Ferreira. And then on June 8th, he prepared and conducted a photo array identification for Brian Perez containing a photograph of Nunez. He was deeply involved in the investigation. He interviewed witnesses and conducted photo arrays and issued an ICAD for an arrest. You can't say that we haven't sufficiently pled his personal involvement under those circumstances. Look, the case of Provost against the city of Newburgh and the case of Alvarez against the city of Orange that I cited in my brief, he has definitely, we've definitely sufficiently pled his personal involvement given those facts. All right. Thank you very much. We're going to take the case.